**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**In Admiralty**

| | |
|---|---|
| **IN THE MATTER OF THE COMPLAINT OF COTTRELL CONTRACTING CORPORATION, AS OWNER OF THE BARGE 6030 II, FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | **Civil Action No. 2:25cv637** |

**COTTRELL CONTRACTING CORPORATION'S BRIEF IN OPPOSITION TO JPW INDUSTRIES INC.'S OMNIBUS MOTION IN LIMINE**

Limitation Plaintiff Cottrell Contracting Corporation ("Cottrell"), as owner of the Barge 6030 II (the "Vessel"), by counsel, submits this brief in opposition to the Omnibus Motion in Limine (the "Motion") filed by Third-Party Defendant JPW Industries Inc. ("JPW"). For the reasons stated below, the Court should deny JPW's Motion.

## PRELIMINARY STATEMENT

In its Motion, JPW asks the Court to make two evidentiary rulings in advance of trial. In Motion in Limine 1 ("MIL No. 1"), JPW seeks to preclude testimony from Cottrell's marine engineer expert, Rik van Hemmen ("van Hemmen"). Dkt. No. 89 at 1. JPW asserts that van Hemmen's testimony will be cumulative of Deborah Dickerson's ("Dickerson") because JPW anticipates they will both testify to "warnings and humans [sic] factors." Dkt. 89 at 1. The testimony of these witnesses, one an expert in the field if marine engineering and other in the field of human factors and safety engineering, is not cumulative because their expertise is in different disciplines. Their respective insights will aid the Court in assessing the evidence in this case. Indeed, JPW has also identified an engineer and a human factors expert to address and interpret JPW's warning. (See JPW's expert reports, attached as **Exhibit 1**).

In Motion in Limine 2 ("MIL No. 2"), JPW seeks to preclude evidence, testimony, or argument related to cold patch practices and customs of other dredging companies as prejudicial and not relevant to either parties' claims. Dkt. No. 89 at 2. This industry practice evidence is relevant to whether the harm posed by the chain hoist was foreseeable to JPW as the product manufacturer/distributer and Cottrell's evidence of industry practice has a proper foundation. JPW provides no support for its claim that the evidence is prejudicial, and even if it did, courts generally should not exclude evidence as prejudicial in advance of a bench trial. *See Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994).

## FACTS

### A. Background

This case arises from the installation of a "cold patch" on a leaking section of submerged dredge pipe. To install a cold patch, the crew lifts the dredge pipe onto a crane barge, stuffs material into the hole, covers it with a rubber mat, places a steel half-round plate over the mat, and secures the plate by wrapping chain around the pipe and tightening it with lever hoists. The dredge pipe is then returned to the river. Dkt. No. 73-1 ("van Hemmen Initial Report") at 2. Cottrell has used lever hoists for this purpose for decades. Dkt. No. 73-4 (Clemmons Dep.) at 17-18. The method is "a long-established and widely accepted practice within the dredging industry." Dkt. No. 73-2 ("Taylor Report") at 6.

On June 8, 2025, while securing a cold patch with a JET ¾-ton lever hoist, deckhand Maliek King pulled on the lever to tighten the chain and the chain snapped, striking King in the face. Dkt. No. 73 at 2. Cottrell claims that JPW should have warned that its ¾ ton model should not be used in a binding application because in that application there is no way to gauge the load applied to the chain and a hand pull can break the chain on that model – exactly what occurred

here. JPW counters that its warning "not to operate the puller when it is restricted from forming a straight line with the direction of loading" and similar warnings in its user manual were adequate. The contending experts in the fields of engineering and human factors disagree about the adequate of JPW's warnings.

## B. The Expert Reports

**Rik van Hemmen**. Van Hemmen is a licensed Professional Engineer, a Fellow of the Society of Naval Architects and Marine Engineers and of the National Academy of Forensic Engineers, and the President of Martin & Ottaway, a marine consulting firm. Van Hemmen Initial Report at 1. He inspected the failed hoist aboard the dredge in July 2025, measured the chain links, and determined that only the links at the end passing into the hoist body were stretched. *Id.* at 3-6. He concluded that a crewman's hand pull on the lever could break the chain. *Id.* at 12. He identified two design issues: JPW sells this model without the overload protection it offers on other hoists, and the lever "ears" can lift the hoist body and add load to the chain. *Id.* at 11-12, 19. He then explained that the manual nowhere discloses that a user can overload the chain to failure by pulling on the lever, and he proposed specific language that would have done so. *Id.* at 12-19.

JPW responded with reports of experts countering van Hemmen's conclusion. Mechanical Engineer Smith concluded that the chain failed because of "bending stress" on the chain caused by wrapping the chain around the pipe, that the chain had passed over a sharp edge, and he found the warnings in JPW's user manual adequate. (Smith Report, Ex. 1). JPW proffers the opinions of another engineer, Joe Tucker, Ph.D. P.E., who found pre-existing damage to the hoist and he commented on JPW's warnings (Tucker Report, Ex. 1). JPW offers the opinion of Julie Diebol, CSP, who comments extensively on JPW's warnings and finds them completely adequate. That's three experts testifying for JPW about its user manual, label, and warnings.

In his rebuttal report, van Hemmen accepted Smith's correction of his lever-force figures and recalculated them: a 31-pound pull brings the chain to rated load, a 124-pound pull takes it beyond the four-times-rated test load into "unknown territory," all according to Smith's correction. Dkt. No. 73-7 ("van Hemmen Rebuttal Report") at 17-18. To evaluate Smith's causation opinions, van Hemmen evaluated the cold-patch configuration and found that no sharp edge or pinch point caused the failure. He found also that Smith's "bending stress" opinion was flawed because the ratio of the chain diameter to the circumference of the pipe indicated that wrapping the chain did not reduce its load bearing capacity. In other words, Smith's "bending stress" opinion was flawed. *Id.* at 10-15. He explained that JPW's experts had failed to identify a credible theory of causation, which confirmed van Hemmen's initial conclusion that the chain was overloaded from a hand pull. In other words, the problem was not wrapping the chain around the pipe – it was the fact that a hand pull could break the chain on the ¾ ton model. Nothing in JPW's user manual or on-product label warned of this unexpected hazard.

**Dr. Deborah Dickerson**. Dickerson is Cottrell's human factors and safety expert. She opines that the user manual is unclear, that it fails to warn against, and in fact appears to endorse, using the hoist to bind, and that a chain should not be wrapped around a pipe to bind because the chain can twist and the user has no way to determine the load. She also opines that an adequate warning must identify the hazard, describe the harm that may result, and tell the user how to avoid it, and that JPW's manual and label fail all three requirements.

## ARGUMENT

### A. MIL No. 1 Should be Denied Because van Hemmen's Testimony is Not Cumulative.

In its MIL No. 1, JPW seeks to exclude the expert testimony of van Hemmen on the grounds that his testimony is inadmissible as "cumulative testimony pertaining to warnings and

human factors" under Federal Rule of Evidence 403. Dkt. No. 89 at 1. This is an odd objection because JPW has identified *three* experts to testify about its user manual and warnings. MIL No. 1 should be denied because van Hemmen's testimony is not duplicative or cumulative of Dickerson's testimony, as they are from separate disciplines and have different backgrounds and experiences. MIL No. 1 should also be denied because excluding van Hemmen's testimony before trial would be premature. Further, "rejection of expert testimony is the exception rather than the rule." *Hae Sys. Norfolk Ship Repair, Inc. v. United* States, No. 2024 U.S. Dist. LEXIS 45681, at *22 (E.D. Va. Feb. 23, 2024) (quoting *Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624 (4th Cir. 2018)).

Where experts have different specialties within the same field, and will testify based on their own distinct perspective and experiences, a motion in limine to preclude an expert's testimony should be denied. *See Hae Sys. Norfolk Ship Repair*, 2024 U.S. Dist. LEXIS 45681 at *21 ("Because each witness has a different background and experience, it cannot be determined at this stage that [defendant's expert's] testimony is cumulative and should be excluded."); *Dorman v. Anne Arundel Med. Ctr.*, No. MJG-15-1102, 2018 U.S. Dist. LEXIS 89627, at *6–8 (D. Md. May 29, 2018) (denying plaintiff's motion to preclude cumulative expert testimony where defendants designated two obstetricians and a maternal-fetal specialist to testify to the standard of care); *Stone v. Stoker*, No. 91-2126, 1992 U.S. App. LEXIS 10417, at *2-4 (4th Cir. May 13, 1992) (holding that the trial court did not err in allowing three doctors to testify regarding causation for the defendant because "each witness offered a distinct insight").

Second, van Hemmen's testimony is necessary for Cottrell to respond to JPW's own engineering experts. JPW has identified both Dr. Smith and Dr. Tucker as engineering experts who will testify at trial. Dkt. No. 91 at 2. JPW has also designated a human factors expert, Dr. Julia K.

Diebol. *Id.* Dr. Smith and Dr. Tucker are both engineers at Exponent whose testimony will relate to the chain hoist's design, failure, warnings, and will evaluate the incident at issue in this case. Cottrell should not be limited to a single human factors expert where JPW plans to offer the testimony of two engineers and a human factors expert at trial.

Third, it is premature to exclude van Hemmen's testimony before trial. Even if there are areas of overlap in van Hemmen and Dickerson's testimony, JPW will be able to raise objections to any duplicative or cumulative testimony at trial, where the Court will be in the best position determine if their testimony should be limited. *ZP No. 332, LLC v. Huffman Contrs., Inc.*, No. 2:24-cv-611, 2025 U.S. Dist. LEXIS 224007, at *39 (E.D. Va. Nov. 13, 2025) ("Rather than exclude Travelers' experts prematurely, ZP can raise objections to duplicative testimony during trial, and the District Judge, having heard the testimony, will be best positioned to enforce necessary limits."). In *Huffman*, the plaintiff argued that the defendant's experts would "present testimony from similar if not the same disciplines" on the same topic, and that their testimony was inadmissible as cumulative. *Id.* at *36–37. The court acknowledged that "during a jury trial, '[l]imiting the number of expert witnesses . . . reduces the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony.'" *Id.* at *37 (quoting *McCann v. Cullinan*, No. 11-cv-50125, 2016 U.S. Dist. LEXIS 118659 (N.D. Ill. Sept. 2, 2016). Not only is this a bench trial, and not a jury trial that would merit such concerns, but the Court explicitly states in *Huffman* that "excluding expert testimony due to expert reports overlapping can be premature" and motions to exclude cumulative testimony should instead be made at the time of trial. *Id.* at *38. For these reasons, JPW's MIL No. 1 should be denied.

The Court should let all the experts testify. The truth finding effort is better served by a complete airing of issues and arguments. JPW's request that the Court limit Cottrell's presentation (while it calls three experts regarding the user manual and warnings) tends to frustrate the search for the truth.

**B. MIL No. 2 Should be Denied Because Evidence of Industry Practice is Relevant.**

In MIL No. 2, JPW attempts to assert that evidence of industry practice regarding cold patches is irrelevant and immaterial to the claims in this case. Dkt. No. 89 at 2. JPW also asserts that allowing evidence of industry practice would prejudice JPW.

First, MIL No. 2 should be denied because evidence related to cold patch methods used by other dredging companies is relevant to (1) whether the use was foreseeable, and (2) whether Cottrell was negligent. The Restatement (Second) of Torts § 402A has been adopted into maritime law. *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864 (1986). Under § 402A, comment h, where a manufacturer "has reason to anticipate that danger may result from a particular use," it "may be required to give adequate warning of the danger . . . and a product sold without such warning is in defective condition." "Strict liability for failure to give an adequate warning will be imposed" where the manufacturer "knew or should have known of the danger" the product posed and failed to provide adequate warnings. *Delta Marine, Inc. v. Whaley*, 813 F. Supp. 414 (E.D.N.C. 1993) (citing *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633 (Md. Ct. App. 1992)). Evidence of industry practice is directly related to whether or not JPW had reason to anticipate, or should have known, of the danger posed by using the hoist to apply a cold patch and still failed to provide an adequate warning to purchasers and users. In *Russell v. G.A.F. Corporation*, evidence that it was "common practice in the industry" to walk on the allegedly defective product was the basis for the court's conclusion that "it would be possible for a reasonable person to conclude that

the manufacturer should have foreseen that its product would be used as a walking surface." 422 A.2d 989, 994 (D.C. Ct. App. 1980).

JPW's citation (its lead citation) of *Bristol Steel & Iron Works, Inc. v. Occupational Safety & Health Rev. Comm'n*, shows that it has no support for its motion. *Bristol* has absolutely no bearing here. The question there was whether an OSHA general safety regulation provided "reasonable notice of what safety precautions are required ... to satisfy due process requirements." 601 F.2d 717, 722 (4th Cir. 1979). Courts applied a "reasonable man test" – "whether or not a reasonable person would recognize a hazard" as a test for fair notice and due process. Some courts "limited the reasonable man test to the custom and practice of the industry." Id. This is all well and good if the issue is whether a general safety requirement in an OSHA regulation applies in a given situation; it has *nothing* to do with any issue in this case.

JPW's citation of *Filkins v. McAllister Bros., Inc.* is even more perplexing. There, the court explained in a Jones Act case that "When a person acts in accordance with a uniform custom of persons engaged in like business in the absence of evidence showing that such custom is negligence, should be sufficient to show that such a person acted without negligence." *Filkins*, 695 F. Supp. 845, 848 n.1 (E.D. Va. 1988). This illustrates a reason that the industry standard for cold-patching is relevant and admissible and possibly controlling on the issue of Cottrell's fault. We have no idea why JPW cited this case. JPW's citation was to page 848. On that page, the court wrote that a tug captain's testimony regarding his normal procedure did not establish the proper way to perform the towage because of a "lack of evidence of what is standard in the trade." This is the *opposite* of the point JPW is trying to make.

JPW's citation of *Briggs v. Zotos Int'l, Inc.*, 357 F. Supp. 89, 93 (E.D. Va. 1973) is equally pointless. The court excluded evidence of "warnings and precautionary statements given on similar

products manufactured by the defendant and other manufacturers." *Id*. The exclusion was based on lack of foundation where the other products were dissimilar. This case has no relevance here where the evidence is that use of lever hoists to secure cold-patches (the exact same practice at issue in this case) is standard in the dredging industry.

Furthermore, evidence of cold patch methods used by other dredging companies would not unduly prejudice JPW. According to JPW, its prejudice is that the evidence will "wast[e] time" (Dkt. 69 at 3). It is ironic that JPW complains of wasted time in a brief presenting arguments supported by case citations that do not even tangentially support its position. Indeed, one of the cases directly undercuts its position.

"Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (citing Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* § 403[03] (1993)). This is especially true when determining if evidence is prejudicial for a bench trial, rather than a jury trial. *See id.* ("[I]n the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial . . . we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."). Thus, relevant industry practice evidence should not be excluded as prejudicial, not relevant, or lacking proper foundation in this bench trial proceeding.

## III. CONCLUSION

For the foregoing reasons, the Court should deny JPW Industries Inc.'s Omnibus Motion in Limine.

Date: October 9, 2026

Respectfully,

By: */s/ John E. Holloway*
John E. Holloway (VSB No. 28145)

Patrick M. Brogan ( VSB No. 25568)
Christopher M. Seelie (VSB No. 99544)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
T: (757) 624-3000
F: (888) 360-9092
john.holloway@kaufcan.com
patrick.brogan@kaufcan.com
christopher.seelie@kaufcan.com

Daniel C. Yates (VSB No. 89701)
KAUFMAN & CANOLES, P.C.
One City Center
11815 Fountain Way, Suite 400
Newport News, VA 23606
T: (757) 873-6300
F: (888) 360-9092
danny.yates@kaufcan.com

*Counsel for Limitation Plaintiff Cottrell Contracting Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of October, 2026, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to filing users in this matter.

By: /s/ *John E. Holloway*
John E. Holloway (VSB No. 28145)
Patrick M. Brogan ( VSB No. 25568)
Christopher M. Seelie (VSB No. 99544)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
T: (757) 624-3000
F: (888) 360-9092
john.holloway@kaufcan.com
patrick.brogan@kaufcan.com
christopher.seelie@kaufcan.com
*Counsel for Limitation Plaintiff Cottrell Contracting Corporation*