IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

IN THE MATTER OF THE COMPLAINT OF COTTRELL CONTRACTING CORPORATION, AS OWNER OF THE BARGE 6030 II, FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Civil Action No. 2:25-cv-637

Limitation Plaintiff.

**MEMORANDUM OPINION AND ORDER**

This case arises from a workplace accident involving Maliek King, a deckhand employed by Cottrell Contracting Corporation ("Cottrell"). King alleged that he was injured while using a piece of equipment, known as a lever hoist, to repair a dredge pipe. King subsequently sued Cottrell in state court, prompting Cottrell to file this action claiming exoneration from or limitation of liability for all claims. Cottrell also filed a Third-Party Complaint for indemnity or contribution against the manufacturer of the lever hoist, JPW Industries, Inc. ("JPW"). This matter is now before the Court on JPW's Motion for Summary Judgment. Dkt. No. 66. For the reasons set forth below, JPW's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

A lever hoist is a simple mechanical device that uses a lever and ratchet mechanism. A user operates the hoist's lever, which applies a pulling force to the chain (or wire rope) attached to the hoist.[1] *See* Dkt. No. 67, at 5; Dkt. No. 67-5, at 8–9. In this way, with repeated operation of the

[1] The facts in this section are undisputed unless otherwise noted. Notably, Cottrell did not draft its response in compliance with Local Civil Rule 56(B). That rule holds that "[a] brief in response to [a motion for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." E.D. Va. Local Civil Rule 56(B). When a party fails to comply with this rule, "the Court

lever, the hoist can be used to lift or pull heavy loads. Dkt. No. 67-5, at 8–9. On June 8, 2025, King was using a JPW lever hoist while working aboard a dredging vessel operated by Cottrell.[2] Dkt. No. 67, at 2. King was attempting to repair a dredge pipe by applying a cold patch. *Id*. This involved plugging a hole in the dredge pipe with silicone and burlap, covering the area with a rubber patch, topping the rubber patch with a weight, wrapping the chain of the lever hoist around the weight and patch, and then repeatedly operating the hoist's lever to tighten the chain. *Id*. The lever hoist was used, in other words, to bind the cold patch in place. *Id.* As King was operating the lever, applying ever more tightening pull force, the chain of the lever hoist snapped and struck him in the face, injuring him. *Id.*

King then brought an action against Cottrell in state court, Dkt. No. 1, at 1–2, and Cottrell responded by filing this action claiming exoneration from or limitation of liability for all claims. *Id.* Cottrell subsequently filed a Third-Party Complaint against JPW. Dkt. No. 15. In Count I of its Third-Party Complaint, Cottrell raised a claim for active-passive tort indemnity, arguing that JPW must indemnify Cottrell based on a products liability theory. *Id.* at 5–6. In Count II, Cottrell raised

---

may assume that facts identified by the moving party in its listing of material facts are admitted." *Id.* Cottrell included no section listing disputed material facts, *see* Dkt. No. 83, and that has frustrated the Court's ability to review this case. Pursuant to Local Rule 56(B), the Court could choose to take JPW's statement that "the [lever hoist's] chain failed due to misuse, not due to any defect in the lever hoist or inadequate warnings" as conceded by Cottrell, which would lead directly to JPW's Motion for Summary Judgment being granted in its entirety. Dkt. No. 67, at 4. That said, JPW did not raise this argument, and the factual record is relatively straightforward. As such, the Court has endeavored to describe the disputed facts using the record available to it.

[2] All that follows regarding the circumstances of King's injury is noted as "alleged" by JPW. Dkt. No. 67, at 1–4.

another claim for indemnity, this time based on breach of warranty. *Id.* at 6. Finally, in Count III, Cottrell raised a claim for contribution as an alternative to indemnity.[3] *Id.* at 6–7.

JPW filed a Motion for Summary Judgment, arguing that Cottrell's claims must be dismissed. Dkt. No. 66. Cottrell responded, Dkt. No. 83, and JPW replied, Dkt. No. 94. JPW's Motion for Summary Judgment is therefore ripe for adjudication. As this case arises under admiralty law, the Court will apply admiralty law. Dkt. No. 15, at 1–2.

## II. LEGAL STANDARD

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). The district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is material if "proof of its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citations omitted).

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *Wai Man Tom*, 980 F.3d at 1037 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party must then establish that specific, material facts exist which would give rise to a genuine issue. *Id*. However, a mere "scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. In reaching its decision, "the court

[3] Cottrell also tendered the claims of King to JPW. Dkt. No. 15, at 7. King has since voluntarily dismissed all his claims against JPW with prejudice, Dkt. No. 113, so the Court will not take up those claims.

must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

## III. ANALYSIS

### A. Active-Passive Tort Indemnity

Count I of Cottrell's Third-Party Complaint seeks indemnity from JPW based on an active-passive tort indemnity theory. Dkt. No. 15, at 5–6. In admiralty law, the active-passive tort indemnity theory allows a party guilty of only passive or secondary fault to transfer ultimate liability to a party that is guilty of active or primary fault. *Vaughn v. Farrell Lines, Inc.*, 937 F.2d 953, 957 (4th Cir. 1991). Here, Cottrell argues that it is entitled to active-passive tort indemnity based on three products liability theories: manufacturing defect, design defect, and failure to warn. Dkt. No. 15, at 5–6. In its Motion for Summary Judgment, JPW argues that it is entitled to summary judgment on all these theories. Dkt. No. 67, at 5–6. JPW also contends that even if its lever hoist was defective, Cottrell cannot recover on an active passive-tort indemnity theory because Cottrell was itself actively negligent. *Id.* at 7–8. The Court will take up these arguments in turn.

#### 1. Manufacturing Defect

A manufacturing defect exists when a product fails to conform to a manufacturer's own specifications. *See* Restatement (Third) of Torts: Prod. Liab. § 2 (A.L.I. 1998). Cottrell alleged in its Third-Party Complaint that the lever hoist had a manufacturing defect, Dkt. No. 15, at 5, but it has since conceded that there was no such defect. Dkt. No. 83, at 1. For this reason, JPW's Motion for Summary Judgment is GRANTED with respect to the manufacturing defect theory of active-passive tort indemnity advanced by Cottrell.

2. Design Defect

"The law of products liability, including negligence and strict liability, is a part of general maritime law." *Pridemore v. Hryniewich*, No. 2:17-cv-109, 2022 WL 4542250, at *7 (E.D. Va. Sept. 28, 2022) (citing *E. River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865–66 (1986)). Design defect is one theory of products liability. A product has a defective design when "the risks inherent in the product are greater than those a reasonable buyer would expect, and the likelihood and gravity of the harm outweigh the potential utility of the product." *Id.* at *8 (citing Restatement (Second) of Torts § 402A, cmt. i (A.L.I. 1965)). To prove a claim of products liability based on defective design, a plaintiff must show that the product was being used, or misused, in a reasonably foreseeable manner when the injury occurred. *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987).

Cottrell alleges that the lever hoist had a design defect. Dkt. No. 15, at 5. More specifically, Cottrell contends that the lever hoist was unreasonably prone to being overloaded and breaking. Dkt. No. 83, at 4–6. Cottrell argues that inclusion of a slip clutch, a device that functionally prevents a lever hoist from being tightened past its tolerances, would have alleviated this danger. *Id.* at 5. And Cottrell notes that other JPW lever hoists have included slip clutches. *Id.* JPW argues that it is entitled to summary judgment on the issue of design defect because the evidence establishes that King was not using the lever hoist for its intended purpose. Dkt. No. 67, at 5. JPW points to the lever hoist's manual for proof that binding a cold patch is outside the scope of the lever hoist's intended purpose. *Id.*

JPW's argument misstates the relevant legal test. The fundamental question when a design defect is alleged is whether the product was being used in a reasonably foreseeable manner, and if so, whether the product is defectively designed. While the product's intended purpose is certainly

relevant to this inquiry, it does not entirely capture a product's reasonably foreseeable uses. JPW relies on *Barnes v. Litton Industrial Products, Inc.* for its intended purpose language—but the *Barnes* court itself acknowledged that it understood intended purpose to encompass reasonably foreseeable uses of a product. 555 F.2d 1184, 1187 (4th Cir. 1977) ("Intended use is but a convenient adaptation of the basic test of reasonable foreseeability." (citation modified)).

Here, Cottrell contends that use of the lever hoist to apply a cold patch was, at worst, a foreseeable misuse. Dkt. No. 83, at 16. In support, Cottrell points to evidence establishing that (1) at least some binding applications are endorsed by the lever hoist's manual, and (2) the lever hoist had a lengthy chain well suited to binding applications. *Id.* at 4–5. On this record, the Court finds that genuine questions of material fact exist as to whether the lever hoist was being used in a reasonably foreseeable manner. JPW's Motion for Summary Judgment is DENIED with respect to Cottrell's design defect theory of active-passive torn indemnity.

<u>2. Failure to Warn</u>

Failure to warn is another theory of products liability. The seller or distributor of a product is liable for failure to warn when "the foreseeable risks of harm posed by [a] product could have been reduced or avoided by the provision of reasonable instructions or warnings . . . and the omission of the instructions or warnings render[ed] the product not reasonably safe." Restatement (Third) of Torts: Prod. Liab. § 2(c) (A.L.I. 1998); *see also Pridemore,* 2022 WL 4542250, at *8. To prove a claim of products liability based on failure to warn, a plaintiff must also prove that the inadequate warning caused the relevant injury. To that end, the plaintiff must produce evidence that the injured person—or, at minimum, the injured person's supervisory personnel—read the relevant label, warning, or manual. *See Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 984 (5th Cir. 1978).

Cottrell alleges that JPW failed to provide legally adequate warnings regarding the dangers of the lever hoist. Dkt. No. 15, at 5. Specifically, Cottrell contends that JPW failed to provide adequate warnings that hand-tightening the lever hoist could cause the attached chain to break, or that using the chain to bind an object—like a dredging pipe—could lead to the chain breaking. Dkt. No. 83, at 6. In its Motion for Summary Judgment, JPW asserts that it is entitled to summary judgment because (1) the manual, on its face, adequately warned against using the lever hoist to apply a cold patch, and (2) there is no evidence that Cottrell reviewed the lever hoist's manual. Dkt. No. 94, at 1–4.

JPW's first argument turns on interpretation of the manual. JPW points to the fact that the manual does not endorse using the lever hoist to bind objects with chain and that it further states that "all pulls or lifts must be made with straight chain that is free of obstacles." Dkt. No. 67, at 5. Cottrell counters that the manual explicitly endorses using the lever hoist to bind objects and includes an image of such an application.



*Figure 10*

Dkt. No. 83, at 3–5. The manual does refer to using a wire rope, rather than a chain, in binding applications—but Cottrell points out that the manual does not explicitly warn against using a chain in binding applications. *Id.*

In a failure to warn case, the factfinder will ask whether a foreseeable risk of harm could have been reduced by reasonable warnings, and whether a lack of such warnings rendered the relevant product unreasonably dangerous. Restatement (Third) of Torts: Prod. Liab. § 2(c) (A.L.I. 1998). Given this standard's focus on reasonableness, whether warnings were adequate is generally a question of fact reserved for the jury. *See Abbot by Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1115 (4th Cir. 1988). Additionally, at the summary judgment stage, all reasonable inferences are to be drawn in favor of the nonmoving party. *Reeves*, 530 U.S. at 150. Here, JPW argues that the lever hoist's manual contained adequate warnings. But, considering that the lever hoist's manual endorses at least some binding applications (and does not explicitly warn against using a chain in binding applications), the Court concludes that a reasonable factfinder could interpret the manual's warnings as inadequate.

JPW additionally argues that it is entitled to summary judgment because the evidence establishes that Cottrell did not review the lever hoist's manual—creating a fatal causation problem. Dkt. No. 67, at 6. JPW contends that neither King nor his supervisors reviewed the lever hoist's manual. Dkt. No. 67, at 3, 6. JPW relies on the deposition of James Cottrell, one of King's supervisors, in which Mr. Cottrell was asked whether he read the lever hoist's manual. Dkt. No. 67, at 3. Mr. Cottrell responded that "we were under the knowledge of all of this through our continued use of these over the years." Dkt. No. 83, at 9. Later, Mr. Cottrell asserted that he had a "working knowledge" of the contents of the manual. Dkt. No. 67-4, at 18:3–12.

Cottrell contends that these statements leave open a genuine dispute of material fact as to whether Mr. Cottrell reviewed the lever hoist's manual and the Court—again drawing all reasonable inferences in Cottrell's favor—agrees. The Court therefore concludes that JPW's Motion for Summary Judgment must be DENIED with respect to Cottrell's failure to warn theory of active-passive tort indemnity.

4. Cottrell's Negligence

Notwithstanding any of the alleged defects of the lever hoist, JPW argues that it is entitled to summary judgment because the evidence establishes that Cottrell was actively negligent, and active negligence bars active-passive indemnity theory. Dkt. No. 67, at 7–8; *see also Vaughn*, 937 F.2d at 957. This argument implicates many of the factual issues discussed above, including the question of reasonably foreseeable use, the question of whether Cottrell adequately read the lever hoist's manual, and interpretation of the manual's warnings. Moreover, negligence is generally a fact issue to be decided by the factfinder. *See Kritter v. Mooring*, 138 F.4th 141, 274–75 (4th Cir. 2025). As such, the Court concludes that there are genuine disputes of material fact regarding whether Cottrell was negligent. JPW's Motion for Summary Judgment is therefore DENIED with respect to JPW's argument that Cottrell was negligent.

**B. Breach of Warranty Indemnity**

Count II of Cottrell's Third-Party Complaint seeks indemnity based on breach of warranty. At the Final Pretrial Conference, Cottrell abandoned the claims raised in Count II. On that basis, JPW's Motion for Summary Judgment is GRANTED as to Count II.

**C. Contribution, in the Alternative to Indemnity**

Count III of Cottrell's Third-Party Complaint asserts a claim for contribution, in the alternative to indemnity. Dkt. No. 15, at 6–7. If Cottrell is found to have been actively negligent,

active-passive tort indemnity would be foreclosed, but contribution would not be. *See Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 171–72 (3d Cir. 1989) (explaining that contribution is available when a jointly and severally liable tortfeasor is made to pay more than its proportionate share of the fault). For example: if the lever hoist had a design defect—but Cottrell was actively negligent in any case—there could be no active-passive tort indemnity, but contribution would potentially be available.

In its Motion for Summary Judgment, JPW argues that Cottrell's claim for contribution must fail but JPW does not advance an independent basis to support this argument, instead relying on the arguments it already raised in opposition to active-passive tort indemnity. Dkt. No. 67, at 8. Having already found genuine disputes of material fact with respect to whether Cottrell was negligent, whether the lever hoist's warnings were adequate, and whether the lever hoist had a design defect, the Court DENIES JPW's Motion for Summary Judgment with respect to Cottrell's claim for contribution.

**D. Maintenance and Cure**

One category of damages for which Cottrell is seeking indemnity or contribution is maintenance and cure damages. Maintenance and cure damages are specific to admiralty law, and they involve "reimbursement for costs incurred to maintain [a] disabled seaman's standard of living during the period of his disability ('maintenance'), as well as reimbursement for the costs of his care ('cure'), including any nursing and medical attention during such period as the duty continues." *Dishong v. Peabody Corp.*, 219 F.R.D. 382, 385 (E.D. Va. 2003).

In its Motion for Summary Judgment, JPW argues that general principles of indemnity and contribution do not apply to maintenance and cure, and that Cottrell alone is required to pay maintenance and cure. Dkt. No. 67, at 8–10. Whether indemnity or contribution can be sought for

maintenance and cure damages is a question that has divided the circuits—and no court in the Fourth Circuit has yet addressed this question. 1B Benedict on Admiralty § 47 (2026). The Court agrees with the prevailing view among the circuits: there is "a general maritime-law right of shipowners to recover maintenance and cure payments made to an injured seaman from a third-party tortfeasor whose negligence caused the seaman's disability." *Dishong* 219 F.R.D. at 385, n. 4; *see also* 1B Benedict on Admiralty § 47. In following the prevailing view, the Court relies on "the commonsense principle that a party whose neglect has caused or contributed to the need for maintenance and cure payments should reimburse the cost of those payments, which would otherwise be borne by a non-negligent or passively negligent employer." *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 723–24 (5th Cir. 1980). JPW's Motion for Summary Judgment is therefore DENIED with respect to Cottrell's claim for contribution or indemnity regarding maintenance and cure damages.

## IV. CONCLUSION

For the reasons stated above, JPW's Motion for Summary Judgment, Dkt. No. 66, is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Cottrell's manufacturing defect theory of active-passive tort indemnity, as well as Cottrell's breach of warranty theory of indemnity. It is otherwise DENIED.

It is so ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: October 23, 2026